UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM NICHOLS,

        Plaintiff,

v.                                             Case No. 18-C-30

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

---

### DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION

---

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff William Nichols' application for a period of disability and disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be affirmed.

### BACKGROUND

On December 5, 2014, Nichols, then age 62, filed an application for disability and disability insurance benefits, alleging disability beginning October 18, 2014. He listed a broken back, Harrington rods in his back, right leg nerve damage, right foot drop, extreme headaches, hypertension, and high cholesterol as the conditions that limited his ability to work. R. 98. The application was denied initially on April 14, 2015, and upon reconsideration on August 19, 2015. Nichols then requested a hearing before an administrative law judge (ALJ). ALJ Wayne L. Ritter conducted a hearing on August 18, 2017. Nichols, who was represented by counsel, and a vocational expert (VE) testified. R. 76–96.

In 1978, Nichols broke his back in a car accident after driving his car into a ditch. As a result of the accident, Nichols ended up with Harrington rods in his back. R. 79. Nichols underwent his last back surgery in 1999. R. 81. Nichols took medication for his back approximately once or twice a week. About three years prior to the administrative hearing, Nichols hit a deer with his car but did not suffer injuries from that accident. R. 82. Nichols testified that he has problems sitting and can stand for only a short period of time. R. 84. He also reported that he stumbles and falls when he walks as a result of the nerve damage in his right leg. R. 85. He testified that he cannot bend over on a regular basis and that it takes him anywhere from ten to thirty minutes to get dressed. R. 86, 90.

At the hearing, Nichols reported that he had worked at Jay's Potato Chips and then as a bartender at a golf course. R. 80. His duties at the golf course included managing the bar, supervising two employees, and overseeing the pro shop. R. 86. Although Nichols testified that his employer terminated him because the golf course was downsizing, he believed he was terminated because he made mistakes due to his extreme headaches and confusion. R. 80. He reported that he had a constant headache for fifteen years that makes him confused at times. R. 83–84. He indicated that he takes different medications for the headaches and that the medications make him light-headed. *Id.* He also noted that he has difficulty remembering words and working with numbers, and loses his train of thought. R. 89. Nichols testified that he does not see a doctor on a regular basis for mental health treatment and did not take medications for mental health. R. 87. The attorney who represented Nichols at the hearing acknowledged that his client's case was a "straight back case." R. 80.

In a written decision dated September 6, 2017, the ALJ found Nichols was not disabled. R. 61–71. Following the Agency's sequential evaluation process, the ALJ concluded at step one that Nichols met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since October 18, 2014, the alleged onset date. R. 63. At step two, the ALJ found Nichols had the following severe impairments: disorders of the spine and peripheral neuropathy. *Id.* He found Nichols' hypertension, headaches, high cholesterol, clinical obesity, and benign prostatic hypertrophy were nonsevere impairments. *Id.* The ALJ also determined that Nichols' medically determinable mental health impairment of an adjustment disorder with depressed and anxious mood, considered singly and in combination, was nonsevere because it does not cause more than minimal limitation in Nichols' ability to perform basic mental work activities. R. 64. At step three, the ALJ concluded Nichols' impairments or combination of impairments did not meet or medically equal any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 66.

After reviewing the record, the ALJ determined Nichols has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b), "that allows him to alternate between sitting and standing at will, provided he is not off task greater than ten percent of the workday, in a position involving no more than occasional climbing of ramps, stairs, ladders, ropes or scaffolds; and he must avoid concentrated exposure to unprotected heights, hazards, or the use of dangerous moving machinery." *Id.* With these limitations, the ALJ found at step four that Nichols is capable of performing his past relevant work as a manager. R. 70. Based on these findings, the ALJ concluded Nichols was not disabled within the meaning of the Social Security Act. R. 71. The ALJ's decision became the final decision of the Commissioner when the Appeals

Council denied Nichols' request for review. Thereafter, Nichols commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Nichols sole argument is that the ALJ erred by not properly assessing his nonsevere mental impairment, adjustment disorder with depressed and anxious mood, in the RFC and its impact on

4

his past relevant work. The RFC represents the most that a claimant can do despite the physical or mental limitations imposed by his impairments. 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC "based on all the relevant evidence" in the case record, including severe and nonsevere impairments as well as medical and non-medical evidence. § 404.1545(e). The ALJ's hypothetical question to the VE must then incorporate all of the limitations identified in the RFC. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)).

In this case, the ALJ determined Nichols has the RFC to perform light work "that allows him to alternate between sitting and standing at will, provided he is not off task greater than ten percent of the workday, in a position involving no more than occasional climbing of ramps, stairs, ladders, ropes or scaffolds; and he must avoid concentrated exposure to unprotected heights, hazards, or the use of dangerous moving machinery." R. 66. Nichols asserts that the ALJ should have included limitations associated with his diagnosis of adjustment disorder with anxious and depressed mood, which the ALJ concluded was a nonsevere impairment, in his RFC. He asserts that remand is required for a proper evaluation of his nonsevere mental impairment to determine what limitations were derived from it and whether those limitations impacted his ability to perform past relevant work. Pl.'s Reply Br. at 4, ECF No. 21.

Nichols's argument is flawed, however, because he does not suggest what additional limitations created by his mental impairment should have been included. The regulations indicate that the ALJ "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184, at *5. In other words, if the plaintiff does not allege that an impairment creates a certain limitation or restriction, the ALJ cannot find that that limitation exists:

5

> When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

*Id.* at *1. No regulation or ruling requires that the ALJ must find limitations associated with a nonsevere impairment simply because he finds that the plaintiff has that impairment.

The ALJ relied upon Nichols' medical history, medical source statements, the functional reports, and Nichols' testimony to assess his RFC. He fully summarized the record with respect to all of Nichols' impairments. As to Nichols' adjustment disorder in particular, the ALJ recognized that Nichols reported some problems with memory, concentration, understanding, and getting along with others in his functional report and to a nurse practitioner during a physical exam. R. 64 (citing R. 250, 321). At a July 2015 psychological consultative examination with Dr. Robert Schedgick, Nichols indicated he was irritable and worried about economic factors. *Id.* (citing R. 333). Dr. Schedgick noted that Nichols reported that he worries "constantly" about losing his house, keeping his car, and finding a job. R. 337. Dr. Schedgick diagnosed Nichols with adjustment reaction with anxious and depressed mood, noting that Nichols is anxious because he does not have a job. R. 341. He opined that Nichols' work capacity is basic but adequate. R. 342.

The ALJ recognized that, during the examination, Nichols exhibited a depressed and anxious mood while being unable to perform serial seven subtractions. *Id.* (citing R. 337). The ALJ nevertheless observed that Nichols sought no mental health treatment and had not taken medication for his mental health conditions, which suggested his symptoms are not severe. *Id.* He further found that based on the record, Nichols appeared oriented, pleasant, socially engaging, and cooperative with good grooming; had adequate focus, verbal behavior, and concentration; and had

6

a fund of information, normal mental activity, the ability to perform simple calculations and follow a three-step command, intact memory, and acceptable judgment during examinations, which evidenced good functioning despite his mental health symptoms. He therefore concluded Nichols' mental impairment is nonsevere. R. 65.

The ALJ explained that his finding was supported by the opinions of state agency mental health consultant Dr. Stacey Fiore. Dr. Fiore found that Nichols had no more than mild mental health limitations and no severe mental health impairment. R. 113. The ALJ gave Dr. Fiore's opinion great weight, reasoning that it is consistent with the overall record, which demonstrates Nichols did not seek mental health treatment, took no mental health medication, worked a skilled position for a number of years before being laid off due to downsizing, and exhibited good objective mental status examination findings. R. 65–66. The ALJ also gave Dr. Schedgick's opinion that Nichols had an adequate work capacity substantial weight. R. 66. The ALJ noted that Dr. Schedgick's opinion was consistent with his examination notes, which showed Nichols had no more than mild deficits, and the overall record, which showed Nichols appeared pleasant and cooperative with normal mood and affect at other evaluations. *Id.*

Nichols does not point to any record evidence that his mental impairment results in limitations beyond what the ALJ articulated in the RFC. Indeed, Nichols' primary complaint was back pain, problems associated with nerve damage in his right leg, and headaches. Plaintiff's counsel acknowledged that Nichols presented a "straight back case." R. 80. Without any allegations from Nichols or a medical source that adjustment disorder with anxious and depressed mood created any limitations, the ALJ did not err in failing to find his own. In short, substantial

7

evidence supports the ALJ's finding. I conclude that the ALJ did not err in failing to find that Nichols did not have additional limitations related to his nonsevere mental impairment.

## CONCLUSION

For the above reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   18th   day of March, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
